MARYCLAIRE KRUMHOLZ,

Plaintiff,

VERSUS

VILLAGE OF NORTHPORT,

Defendant.

———————————————

**MEMORANDUM AND ORDER**
July 10, 2012

———————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff MaryClaire Krumholz ("Krumholz") brought this action against the Village of Northport ("the Village") alleging violations of the Fair Labor Standards Act ("FLSA"), due process violations in contravention of 42 U.S.C. § 1983, and wrongful termination pursuant to New York State law. The Village moved for summary judgment, arguing that plaintiff is an exempt employee under the FLSA, the Village did not violate plaintiff's right to due process, and plaintiff's action under state law is improperly before this Court and is time-barred.[1] The Village further argued that it was entitled to summary judgment on its counterclaims for conversion and breach of fiduciary duty. Specifically, the Village asserted that plaintiff converted approximately $149,500 in Village funds by (1) drafting checks payable to herself for a total of approximately $115,900, and (2) having the Village pay the IRS and NYS tax on her behalf for approximately $33,600. Plaintiff countered that she was properly compensating herself for accumulated "comp. time," and believed she had been given permission to draft checks payable to herself. Plaintiff also cross-moved for partial summary judgment on the wrongful termination claim.

For the reasons set forth below, the Court grants defendant's motion for summary judgment on the FLSA claim, which is the only remaining federal claim. In particular, the Court holds as a matter of law, based upon the uncontroverted facts, that plaintiff was exempt from the FLSA's overtime pay requirements because, as the

---

[1] At oral argument on February 6, 2012, plaintiff voluntarily dismissed her due process claim under Section 1983 which, in any event, could not have survived summary judgment on the merits for the reasons set forth in defendant's memorandum of law, as well as by the Court at oral argument.

## I. BACKGROUND

### A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[2]

Plaintiff was appointed as the Treasurer of the Village of Northport under the proposal of Mayor George Doll pursuant to the New York State Village Law and the vote of the Village Board of Trustees effective June 7, 2006. (Def.'s 56.1 ¶ 4.) Plaintiff's starting salary was $60,000 per year plus $4,500 in lieu of health benefits. (*Id.*) Plaintiff has a degree in Business Administration from Hofstra University, and was one quarter of the way to obtaining a Masters in Business Administration prior to her employment with the Village. (*Id.* ¶¶ 1, 2.) Before working as the Village Treasurer, plaintiff was a Certified Public Accountant. (*Id.* ¶ 2.) She worked as an accountant and an assistant comptroller for private companies. (Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 3.)

The parties do not dispute that plaintiff had the following duties in her position as Village Treasurer: (1) Plaintiff supervised and reviewed the work of the payroll clerk

Village Treasurer, she was "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Although there are some disputed facts regarding certain aspects of plaintiff's duties, it is undisputed that, as the Village Treasurer, she had, *inter alia*, the following primary duties and authorities: (1) she was responsible for drafting the Village Budget; (2) she had the authority to open bank accounts on behalf of the Village; (3) she had the authority to act as the sole check signatory on behalf of the Village for checks under $5,000; (4) she supervised the work of the person in charge of accounts payable and the person in charge of payroll; and (5) she had the authority to decide where to invest the Village's excess money, and used her judgment to make the decision and get the best interest rate for the Village. These uncontroverted facts demonstrate as a matter of law that her primary duties certainly relate to "the performance of office or non-manual work directly related to the management or general business operations" of the Village, and "include[d] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)-(3). Thus, plaintiff is exempt from the FLSA's overtime pay requirements as an administrative employee. No rational trier of fact could conclude otherwise given these undisputed facts. Accordingly, the disputed facts regarding certain aspects of her other duties simply do not create a genuine issue of material fact for trial on the FLSA claim, and summary judgment in defendant's favor on that claim is warranted. Given that the sole remaining federal claim does not survive summary judgment, the Court in its discretion declines to exercise supplemental jurisdiction over the state law claims, including plaintiff's wrongful termination claim, as well as defendant's counterclaims.

---

[2] In addition, although the parties' Rule 56.1 Statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 Statements, rather than the underlying citation to the record, when utilizing the 56.1 Statements for purposes of this summary of facts.

and the accounts payable clerk. (Def.'s 56.1 ¶ 14.) (2) Plaintiff signed off on the work of the persons whom she supervised. She made the final determination as to what was accurate. (*Id.* at ¶ 15.) (3) Plaintiff was autonomous in respect to those she supervised and relied on her own judgment as to supervision and training. (*Id.* at ¶ 16.) (4) Plaintiff was one of only four people in the Village authorized to sign checks. The other three were the Village Clerk, the Deputy Village Clerk, and the Deputy Treasurer.[3] (Def.'s 56.1 ¶ 17; Pl.'s 56.1 ¶ 17.) (5) Plaintiff was the only person other than the Mayor who was authorized to open banking accounts. (Def.'s 56.1 ¶ 18; Pl.'s 56.1 ¶ 18.) (6) Plaintiff reviewed others' work, assisted others with their work, performed bank reconciliations, made sure items were being posted properly in the ledger, made journal entries, corrected miscoding of accounts, and recorded items of depreciation. (Def.'s 56.1 ¶ 19.) (7) Plaintiff supervised the drafting of the Village budget and reported directly to the Commissioner of Finance, who was a member of the Board of Trustees. (*Id.* ¶ 20; Pl.'s 56.1 ¶ 20.) (8) Plaintiff had the assistance of department heads when she drafted the budget. She was the department head for the line of employees of the Treasurer. (Def.'s 56.1 ¶ 21.) (9) Plaintiff had the authority to decide where to invest the Village's excess money. She used her judgment to make the decision and get the best interest rate for the Village. (*Id.* ¶ 23.) (10) When plaintiff was Treasurer, the Village policy was that she could sign the Village checks if they were for less than $5,000, without requiring a second signature. (*Id.* ¶ 28.) Indeed, plaintiff drafted several Village general fund checks payable to herself for amounts less than $5,000 during the period of October 31, 2007 through February 11, 2009. (*Id.* ¶¶ 11, 12, 39, 57.) At no time did plaintiff obtain a second signature for any check made payable to herself. (*Id.* ¶ 29.)

The parties dispute the exact nature of some of plaintiff's duties. For example, defendant states that plaintiff used her judgment to determine what money went into the Village trust fund, and that she did not answer to anyone in the Village. (*Id.* ¶ 22.) Plaintiff counters, however, that she did not exercise any judgment in determining what money went into the Village trust fund, because that was determined by the payroll system based upon health insurance bills, and was therefore a purely ministerial act. (Pl.'s 56.1 ¶ 22.) Additionally, defendant states that plaintiff, as Treasurer, made and drafted several policies, including the Village policy on travel, credit cards, and cell phone use. (Def.'s 56.1 ¶ 25.) Plaintiff counters that, although she physically drafted the policies, the policies were made with the guidance of and at the specific direction of Village auditors and Board. (Pl.'s 56.1 ¶ 25.) According to plaintiff, she had little or no input as to the actual content of the policies and did not "make" policies. (Pl.'s 56.1 ¶ 25.) As stated *supra*, the Court construes these disputed facts in the light most favorable to plaintiff, the non-moving party.

From October 31, 2007 through February 11, 2009, plaintiff drafted Village checks payable to herself for a total of $115,906.77. (Def.'s 56.1 ¶ 57.) Plaintiff had the Village pay the IRS and NYS tax on her behalf for $33,605.61. (*Id.*) Accordingly, in addition to receiving her annual salary, during the above time period, plaintiff paid herself $149,511.77 from the Village

---

[3] Although defendant asserts that plaintiff was one of only three people in the Village authorized to sign checks (Def.'s 56.1 ¶ 17), the Court has accepted the plaintiff's version – that the Deputy Treasurer was also authorized to sign checks (Pl.'s 56.1 ¶ 17) – for purposes of this motion.

general fund.[4] (*Id.*) Defendant contends that plaintiff converted these Village funds. Plaintiff contends that she was compensating herself for accumulated "comp. time," and believed that she had been given permission to draft the checks payable to herself. (Pl.'s 56.1 ¶¶ 26, 37, 53.) Plaintiff does not dispute that, when she began her salaried position with the Village, she had no expectation of receiving payments for overtime. (Def.'s 56.1 ¶ 13; Pl.'s 56.1 ¶ 13.) However, plaintiff states that she also had no expectation that the requirements of her position as Treasurer would compel her to routinely work more than the 35 hours per week specified in the resolution appointing her to the position, except on a limited basis during budget season. (Pl.'s 56.1 ¶ 13.)

Plaintiff's last day of work for the Village was March 5, 2009. (Def.'s 56.1 ¶ 5.) On that day, she was called to a meeting with the Mayor and others concerning the overtime[5] and reimbursement she had taken. (*Id.* ¶ 6.) Defendant contends that plaintiff was informed that, if she did not resign by the following week, her employment with the Village would be terminated. (*Id.* ¶ 7.) Plaintiff disputes this, pointing to a memorandum given to the plaintiff at the March 5, 2009 meeting that stated, "While we complete our investigation, you are hereby suspended indefinitely without pay." (Pl.'s 56.1 ¶ 7.)

B. Procedural Background

Plaintiff filed the complaint in this action on October 5, 2009. The Village answered and counterclaimed against the plaintiff on November 25, 2009. The Village filed its motion for summary judgment on September 21, 2011. On December 2, 2011, plaintiff opposed defendant's motion and cross-moved for partial summary judgment. On December 23, 2011, the Village opposed plaintiff's cross-motion and replied in support of its motion for summary judgment. On January 6, 2012, plaintiff replied in support of its cross-motion. The Court held oral argument on the motions on February 6, 2012. The Court has fully considered the arguments and submissions of the parties.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ.

---

[4] The Court notes that the sum of $115,906.77 and $33,605.61 is $149,512.38. The slight disparity between this figure and the undisputed amount cited in the parties' motion papers obviously had no impact on this decision.

[5] Plaintiff contends that she took accrued "comp. time" rather than "overtime." (Pl.'s 56.1 ¶ 6.)

4

P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

Defendant argues that plaintiff is exempt from the FLSA because she (1) was "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), and/or because (2) she was an appointed policymaker employed by a political subdivision of a state, 29 U.S.C. § 203(e)(2)(c)(ii)(III).[6] The Court concludes, based upon the uncontroverted facts, that plaintiff was exempt from the FLSA as an administrative employee under 29 U.S.C. § 213(a)(1). Therefore, the Court does not reach the question of whether plaintiff also was exempt under the "policymaker" exemption.

A. Applicable Law

Under the FLSA, employers engaged in interstate commerce must pay overtime pay to an employee working more than forty hours per week "at a rate not less than one

---

[6] The relevant text of the "policymaker" exemption is as follows:

(C) any individual employed by a State, political subdivision of a State, or an interstate governmental agency, other than such an individual –
(i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and
(ii) who –
(I) holds a public elective office of that State, political subdivision, or agency, [or . . . ]
(III) is appointed by such an officeholder to serve on a policymaking level[.]

29 U.S.C. § 203(e)(2)(c)(ii)(III).

and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Not all workers, however, are covered by this scheme. For example, "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the overtime pay requirements. 29 U.S.C. § 213(a)(1). FLSA exemptions such as this one are to be "narrowly construed." *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). Moreover, the "employer bears the burden of proving that its employees fall within an exempted category of the [FLSA]." *Id.* "[I]t is a strict question of law whether the activities and responsibilities of the employee, once established, exempt him or her from the FLSA's overtime requirements." *Alberti v. Cnty. of Nassau*, 393 F. Supp. 2d 151, 174 (E.D.N.Y. 2005) (citing *Tomney v. Int'l Ctr. for Disabled*, 357 F. Supp. 2d 721, 739-40 (S.D.N.Y. 2005)).

The Department of Labor ("DOL") has enacted regulations that establish a two-pronged test for determining whether an employee is exempt as "employed in a bona fide executive, administrative, or professional capacity" under Section 213(a)(1).[7] Under the first prong, the employees must be paid on a "salary basis" at least $455 per week. 29 C.F.R. §§ 541.100(a)(1), 541.200(a)(1), 541.300(a)(1). An employee is considered to be paid on a "salary basis" if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount" that is not subject to deductions based on the quality or quantity of the work performed. 29 C.F.R. § 541.602(a). Subject to certain exceptions, the employee must receive "the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id.*

Under the second prong, the employee must engage in certain "primary dut[ies]." 29 C.F.R. §§ 541.100(a)(2), 541.200(a)(2), 541.300(a)(2). An exempt "administrative" employee must engage in the following primary duties:

> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a)(2)-(3).

The regulations further explain each of these requirements. With respect to duties "directly related to management or general business operations," the employee "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). The regulations provide a non-exclusive list of examples of this type of work, including "work in functional areas such as tax; finance; accounting; budgeting; auditing," among other areas. *Id.* § 541.201(b). With respect to duties

---

[7] The regulations promulgated by the Secretary of Labor pursuant to an express grant of authority from Congress under the FLSA have the force and effect of law. They are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute. *See Freeman v. Nat'l Broadcasting Co.*, 80 F.3d 78, 82 (2d Cir. 1996) (citations omitted); *Reich v. State of New York*, 3 F.3d 581, 587 (2d Cir. 1993).

6

demonstrating "discretion and independent judgment," "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 541.202(a). Some factors to consider in determining whether the employee exercises discretion are:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(b). The regulations note that employees "can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Id.* § 541.202(c). Thus, the employee's decisions do not need to "have a finality that goes with unlimited authority and a complete absence of review." *Id.*

B. Application

As to the "salary" prong of the test, plaintiff's starting salary was $60,000 per year, which constitutes a weekly salary of $1,153.85. (Def.'s 56.1 ¶ 4.) This salary well exceeds the minimum of $455 per week required for an employee to fall within the Section 213(a) exemption. Plaintiff "regularly received" her pay through direct deposit. (Def.'s 56.1 ¶ 10.) There is no indication that plaintiff's payments were "subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). Accordingly, plaintiff satisfies the "salary" prong of the test for an exemption under Section 213(a)(1).

Turning to the first part of the primary duties prong – whether the employee's "work directly related to the management or general business operations of the employer" – the regulations specifically list work in tax, finance, accounting, budgeting, and auditing as examples of areas of work that assist in the running of a business. 29 C.F.R. § 541.201. Plaintiff was a Certified Public Accountant prior to her employment with the Village. (Def.'s 56.1 ¶ 2.) She also has a degree in Business Administration from Hofstra University, and was one quarter of the way to obtaining a Masters in Business Administration. (Def.'s 56.1 ¶¶ 1, 2.) As discussed *supra*, plaintiff's duties included supervising and drafting the Village budget, deciding where to invest the Village's excess money, and opening bank accounts and signing checks. These duties clearly relate directly to the management

and general business operations of the Village.[8]

Plaintiff's duties also satisfy the second prong of the primary duties test – whether she had "discretion and independent judgment" in her role as Village Treasurer. Plaintiff supervised the drafting of the Village budget and reported directly to the Commissioner of Finance, who was a member of the Board of Trustees. (Def.'s 56.1 ¶ 20; Pl.'s 56.1 ¶ 20.) Plaintiff had the assistance of department heads when she drafted the budget. She was the department head for the line of employees of the Treasurer. (Def.'s 56.1 ¶ 21.) Drafting the Village budget constitutes a "major assignment" in the operations of the Village, and demonstrates "authority to commit the employer in matters that have significant financial impact." *See* 29 C.F.R. § 541.202(b). Moreover, plaintiff's responsibility over the budget-drafting process demonstrates that the plaintiff had "authority to formulate, affect, interpret, or implement management policies or operating practices," since determining how to allocate Village resources may substantially impact policies and operating practices. *See id.* Additionally, this duty indicates plaintiff's involvement in the Village's long- and short-term business objectives. *See id.* Thus, this undisputed primary duty, based upon the facts of this case, makes her exempt from the FLSA's overtime requirement under the administrative exemption of Section 213(a)(1).

This Court's holding on this issue is consistent with prior decisions in this Court and other courts under analogous circumstances. For example, in *Alberti v. County of Nassau*, 393 F. Supp. 2d 151, 174 (E.D.N.Y. 2005), this Court held that Califano, the Nassau County Manager of Budget Analysis, and Nigra, the Budget Examiner for Nassau County were exempt from the FLSA's overtime requirements under the administrative exemption. *Id.* at 158-59. The Court explained:

> Califano's responsibility for reviewing the reasonableness of various proposed expenditures, directly related to the management policies or general business operations of Nassau County, and clearly demanded the exercise of discretion and judgment. Nigra prepared spending projections, analyzed expenditures, and

---

[8] Neither party has offered evidence as to the percentage of time plaintiff allocated to each duty. *See* 29 C.F.R. § 541.700(b) ("The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee.") However, even if plaintiff spent a large percentage of her time performing ministerial tasks such as data entry, it is clear that she had primary responsibility over the budget-drafting process and where to invest the Village's excess money. As discussed *supra*, these duties clearly relate to the management or general business operations of the Village, and are indicative of the discretion and independent judgment plaintiff exercised. *See Paul v. UPMC Health Sys.*, No. 06-1565, 2009 U.S. Dist. LEXIS 19277, at *28 (W.D. Pa. Mar. 10, 2009) (employee qualified for administrative exemption even though she offered no evidence about the amount of time allocated to each duty because her "responsibility to make key decisions with respect to certain contracts" constituted a primary duty related to business operations); *Hills v. Western Paper Co.*, 825 F. Supp. 936, 938-39 (D. Kan. 1993) (employee qualified for administrative exemption even if she spent more than one half of her time doing bookkeeping and clerical work, because her primary duties directly related to employer's management policies and general business operations, and she exercised discretion and independent judgment). Moreover, the regulations state: "Time alone . . . is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b).

controlled spending by approving or disapproving purchases, all based on his knowledge of the resources and activities of each County department; these tasks were likewise administrative and likewise required the exercise of independent judgment and discretion.

*Id.* at 174. Plaintiff's responsibilities concerning the Village budget were similar in nature to the responsibilities at issue in *Alberti*. In drafting the budget, plaintiff necessarily evaluated the reasonableness of proposed expenditures, an exercise demanding discretion and judgment. Although plaintiff's duties did not include approving or disapproving purchases, she nonetheless used discretion and judgment in consulting with other department heads to draft the budget and determine how much money to allocate to each department.

Similarly, in *Paul v. UPMC Health System*, No. 06-1565, 2009 U.S. Dist. LEXIS 19277, at *34-35 (W.D. Pa. Mar. 10, 2009), the court held that plaintiff, a manager of grants, funding, and budgets at a mental health service provider, was exempt from FLSA overtime pay requirements under the administrative exemption. In analyzing the plaintiff's primary duties, the court explained:

> The totality of the evidence in this case, even when viewed in plaintiff's favor, demonstrates that plaintiff exercised independent discretion. Although plaintiff attempts to portray herself as a clerical employee, the undisputed evidence of record establishes that her position's duties required analysis and decision making. . . . Plaintiff's position may have largely involved the entry of data, but she nevertheless had to exercise her own judgment in accomplishing that task. In overseeing the billing of contracts, plaintiff had to prepare budgets. [The central office] would ask plaintiff to propose "cuts" in the budgets to save money; plaintiff had the discretion to determine which cuts to propose, and plaintiff sent those budgets to the [financial] office for review. Plaintiff does not dispute that she had the discretion to approve or disapprove purchases and expenditures within contractual and budgetary guidelines, even when [the central office] and her direct supervisor suggested otherwise. Such responsibility demonstrates that the duties of plaintiff's position affected a segment of defendant's business operations to a substantial degree, and that she investigated and resolved matters of significance on behalf of her manager . . . . Such responsibility also demonstrates that plaintiff's position exercised authority to commit the employer in matters that have significant financial impact. Her decisions not being final and having to be reviewed by superiors . . . do not render her without discretion or independent judgment.

*Id.* at *33-34. In the instant action, although neither party alleges that plaintiff oversaw contract billing, her duties with respect to the Village budget-drafting process, discussed *supra*, were similar, and demonstrative of plaintiff's discretion and independent judgment, particularly when considered in conjunction with plaintiff's other duties.[9]

---

[9] In his brief and at oral argument, plaintiff's counsel was unable to point to any case in any federal

9

In particular, in addition to her supervision of the drafting of the Village budget, plaintiff had numerous other duties and authorities, which are uncontroverted, and provide further support for the application of the administrative exemption under Section 213(a)(1). For example, plaintiff had the authority to decide where to invest the Village's excess money. She used her judgment to make the decision and get the best interest rate for the Village.[10] (Def.'s 56.1 ¶ 23.) This duty constitutes a "major assignment[] in conducting the operations of the business," as well as an indication of plaintiff's "authority to commit the employer in matters that have significant financial impact." *See* 29 C.F.R. § 541.202(b).

Plaintiff's duties also included opening bank accounts and signing checks. She was the only person other than the Mayor who was authorized to open banking accounts. (Def.'s 56.1 ¶ 18; Pl.'s 56.1 ¶ 18.) She was one of only four people in the Village authorized to sign checks. The other three were the Village Clerk, the Deputy Village Clerk, and the Deputy Treasurer. (Def.'s 56.1 ¶ 17; Pl.'s 56.1 ¶ 17.) When plaintiff was Treasurer, the Village policy was that she could sign Village checks if they were for less than $5,000, without requiring a second signature. (Def.'s 56.1 ¶ 28.) She exercised this authority regularly, drafting several Village general fund checks payable to herself and signed only by herself for amounts less than $5,000 during the period of October 31, 2007 through February 11, 2009, totaling $115,906.77. (Def.'s 56.1 ¶¶ 11, 12, 29, 39, 57.) These duties provide another indication of plaintiff's authority to commit the Village to matters of significant financial impact.

In sum, even construing the evidence in the light most favorable to plaintiff, the uncontroverted facts demonstrate, for the reasons set forth above, that plaintiff was exempt from the overtime requirements of the FLSA because she was an administrative employee under 29 U.S.C. § 213(a)(1). It is uncontroverted that, as the Village Treasurer, she had, *inter alia,* (1) responsibility for drafting the Village's budget, (2) the authority to open bank accounts and act as sole check signatory for checks under $5,000, and (3) supervisory authority over the work of the person in charge of accounts payable and the person in charge of payroll.[11] It is also uncontroverted that plaintiff had the power to decide where to invest the Village's excess money. These undisputed facts demonstrate, as a matter of law, that her primary duties were "the performance of office or non-manual work directly related to the management or general business operations" of the Village, and "include[d] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)-(3). There are no genuine disputed issues of material fact on this claim that preclude summary judgment.[12]

---

jurisdiction that had concluded that this exemption to the FLSA overtime requirement did not apply to a treasurer or someone with analogous duties and responsibilities.

[10] Additionally, it is undisputed that plaintiff supervised and reviewed the work of the person in charge of accounts payable and the person in charge of payroll. (Def.'s 56.1 ¶ 14.)

[11] Plaintiff's counsel conceded at oral argument that plaintiff was "prominently involved" in the drafting of the Village Budget, with the Village Mayor. Counsel also acknowledged that these other duties were undisputed.

[12] Although certain aspects of plaintiff's other duties and responsibilities are disputed, these factual disputes do not preclude summary judgment in defendant's favor on this issue because, even if these factual disputes were resolved in plaintiff's favor, she would still be subject to the administrative exemption, as a matter of law, given the uncontroverted duties and responsibilities discussed above. No rational trier of fact could find otherwise.

Accordingly, the Court grants defendant's motion for summary judgment on the FLSA claim.

C. State Law Claims

Having granted summary judgment to defendant on plaintiff's federal claim under the FLSA, the only remaining claims are the plaintiff's state law claim of wrongful termination and the defendant's counterclaims for conversion and breach of fiduciary duty.[13] However, having determined that plaintiff's federal claim against the defendant does not survive the defendant's motion for summary judgment, the Court concludes that retaining jurisdiction over any of the remaining state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claim because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); s*ee also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court."). Although the parties urged the Court at oral argument to exercise such jurisdiction for purposes of efficiency and judicial economy, the Court in its discretion concludes that such interests are not sufficient in this case to warrant exercising supplemental jurisdiction over the state law claims. Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claim that survives the summary judgment motion and dismisses any such claims without prejudice.

---

[13] As noted *supra*, at oral argument on February 6, 2012, plaintiff voluntarily dismissed her due process claim pursuant to 42 U.S.C. § 1983.

## IV. Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment on the FLSA claim and declines to exercise supplemental jurisdiction over the remaining state law claims. Thus, given that the Court has declined to exercise supplemental jurisdiction over the state law claims, the cross-motions for summary judgment on the state law claims are moot. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

---

JOSEPH F. BIANCO
United States District Judge

Dated: July 10, 2012
      Central Islip, NY

\* \* \*

Plaintiff is represented by Lane T. Maxson and William P. Caffrey, Jr., Hamburger, Maxson, Yaffe, Knauer & McNally, LLP, 225 Broadhollow Road, Suite 301E, Melville, NY 11747. Defendant is represented by Carl S. Sandel, Morris Duffy Alonso & Faley, Two Rector Street New York, NY 10006.